EX PARTE ALLEN O. HARRISON, Petitioner.

Division Two, May 19, 1908.

1. **FREEDOM OF SPEECH AND PRESS.** The liberty of speech and of the press guaranteed by the Constitution grants to a citizen the right to freely write and publish whatever he may desire and to be protected in so doing, provided always that such publication is not blasphemous, obscene, seditious or scandalous in its character so that it becomes an offense against the public and by its malice and falsehood injuriously affects the character, reputation of pecuniary interest of individuals. But if the publication is neither blasphemous, obscene, seditious, nor defamatory, the General Assembly cannot punish it.

2. ——: **Civic League: Source of Information.** The statute of 1907 making criminal all publications of any report by a civic league concerning candidates for office, even when not scandalous, obscene, blasphemous or defamatory, without stating "in full on what facts they base their report or recommendation, giving the name and address of all persons furnishing the information of and concerning such candidate or nominee, and stating in full the information furnished by such party," and providing that "any person printing or publishing or causing to be printed, published or circulated any such report or recommendation without such information, shall be guilty of a misdemeanor," is in conflict with secton 14 of article 2 of the Constitution which says "that no law shall be passed impairing the freedom of speech; that every person shall be free to say, write or publish whatever he will on any subject, being responsible for all abuse of that liberty," and is therefore void; and the secretary of the league who caused to be printed and circulated through the mails a report concerning candidates for the office of sheriff, which was neither blasphemous, obscene, seditious, defamatory, nor injurious to reputation, without stating the source of the information on which the report was based, was guilty of no crime, and is discharged upon *habeas corpus.*

3. ——: ——: **Impairment of Right.** Anything that makes the exercise of a right more expensive or less convenient, more difficult or less effective, impairs that right. Prior to the enactment of the Act of 1907, petitioner, as secretary of a civic league, would have had the right to publish a truthful report concerning candidates for public office, one free from defamatory or obscene matter, without going to the expense of publishing the names and addresses of all persons who gave him

information in full, and hence the act in requiring him to publish such information along with the report, impairs his constitutional freedom of speech and of the press.

4. ————: ————: Silence. The right to speak freely is necessarily attended by the correlative right to remain silent.

## Habeas Corpus.

PETITIONER DISCHARGED.

GANTT, J.—This is a proceeding under the Habeas Corpus Act, in which petitioner seeks to be discharged from further prosecution under an information filed by the prosecuting attorney of Jackson county, in the criminal court of said county, on the 9th of March, 1908, charging the petitioner with a violation of an act passed by the Legislature of this State and approved April 12, 1907, entitled, "An Act to regulate Civic Leagues and like associations and providing how their reports and recommendations shall be published and what they shall contain, and fixing a penalty for the violation of, and liability for the same." [Laws 1907, p. 261.] A warrant was duly issued upon the information and the petitioner was arrested.

The said information charges that the Kansas City Civic League is and was at all times therein mentioned a league, society and association incorporated under chapter 12, article 11, Revised Statutes 1899, and was formed for the purpose of investigating the character, fitness and qualifications of candidates and nominees for public office. And that it was at all times mentioned and for a long time prior thereto, the custom and purpose of said Kansas City League to make reports and recommendations on such candidates; that on the 24th of December, 1907, in Kansas City, Jackson county, Missouri, the said Kansas City Civic League did through its executive committee then and there in executive session assembled write, make and adopt a recommendation and report upon the fitness and qualifica-

tion of John M. Rood and William J. Campbell, who were then and there candidates and nominees for the election to the office of sheriff of Jackson county, Missouri, at the special election to be held in said county on the 27th of December, 1907, which said recommendation and report with the signatures of the president and secretary of the said Kansas City Civic League is in words and figures as follows:

"CIVIC LEAGUE REPORT.

"Report of the Kansas City Civic League on Candidates for Sheriff to be voted for on December 27th, 1907.

"John M. Rood, Democrat.

"Born on a farm near Quincy, Illinois, in 1858. Went to Carroll county, Missouri, in 1877. Taught school and was engaged in general merchandise business at Carrollton, Missouri, until 1887, when he came to Kansas City, since which time he has been engaged in the lumber business. He served one term in the upper house of the city council, 1900 to 1904. His record was approved by the Civic League at the end of his term. We regard Mr. Rood as a citizen of high type, and well qualified for the office of sheriff.

"William J. Campbell, Republican.

"Was born in Ripley, Ohio, in 1863, and came to Missouri about 1879. Was station agent for the C. B. & Q. Ry. Company at Parkville from 1884 to 1887. Was in the general merchandise business at Parkville from 1887 to 1889, when he came to Kansas City and became a member of the present real estate and insurance firm of Tilhor and Campbell. He served one term in the lower house of the city council from 1900 to 1902. The Civic League said of him at the end of his term, 'He made a good record in the council.' He was appointed sheriff of Jackson county on September 30th, 1907, by the county court. The service of both Mr. Campbell, and the deputies under him, have been highly satisfac-

tory, and the League consider him well qualified for the office.

"By order of executive committee.

"J. McD. TRIMBLE, President.

"A. O. HARRISON, Secretary."

That said report and recommendation did not state in full on what facts the said report and recommendation was based and did not give or contain the name or address of any person or persons furnishing the information of and concerning said candidates and nominees in said report and recommendation contained, or upon which said report was based; that on the 24th day of December, 1907, said Allen O. Harrison, who was then and there a secretary of said Kansas City Civic League, did unlawfully and willfully deliver a copy of said report and recommendation to the Burd & Fletcher Printing Co. in Kansas City, Jackson county, Missouri, and caused two hundred and fifty copies thereof to be printed and published by said printing company upon postal cards of the United States and did thereafter on said 24th of December, 1907, unlawfully and willingly place upon said postal cards upon which said report and recommendation had been printed, the names and addresses of two hundred and fifty different persons residing in said Kansas City, and willfully and unlawfully circulate said postal cards by depositing the same in the United States postoffice in said city with intent that they should be delivered to the persons to whom they were addressed, contrary to the statute of this State.

Petitioner seeks his release from imprisonment on said charge on the ground that said Act of March 12, 1907, is unconstitutional and void because in contravention of section 14 of article 2 of the Constitution of Missouri, which provides "that no law shall be passed impairing the freedom of speech; that every person shall be free to say, write or publish whatever he will

on any subject, being responsible for all abuse of that liberty," and also of section 53 of article 4 of the Constitution of Missouri, which forbids special or class legislation.

Section one of the act of the Legislature of March 12th, 1907, providing how reports and recommendations of Civic Leagues and like associations shall be published, provides: "Leagues, committees, associations or societies, incorporated or unincorporated, formed for the purpose of investigating the character, fitness or qualifications of candidates or nominees for public office, and making reports on the same, shall in each and every printed or published report or recommendation as to such candidates or nominees, state, in full, on what facts they base their report or recommendation, giving the name and address, in full, of all persons furnishing the information of and concerning such candidate or nominee, and state in full the information furnished by such party. Any report or recommendation printed or published by such league, association or society, which does not contain all of the above information shall be unlawful, and any person printing, publishing or causing to be printed, published or circulated any such report or recommendation without such information, shall be guilty of a misdemeanor, and, upon conviction, shall be fined in the sum not less than one hundred dollars nor more than five hundred dollars, or by imprisonment in the county jail for not less than one month nor more than one year, or by both such fine and imprisonment."

The constitutional liberty of speech and of the press grants the right to freely utter and publish whatever a citizen may desire and to be protected in so doing, provided always that such publications are not blasphemous, obscene, seditious, or scandalous in their character so that they become an offense against the public and by their malice and falsehood injuriously affect the character, reputation or pecuniary interest of

individuals. [State v. Van Wye, 136 Mo. l. c. 234; Paterson on Liberty of Speech, page 5; Cooley on Constitutional Limitations (6 Ed.), 518; State ex inf. v. Shepherd, 177 Mo. l. c. 244.]

The General Assembly under the legislative power granted it by the people subject to the limitations of the State and Federal Constitutions unquestionably has the power to enact penal statutes and prescribe civil remedies, "for all abuses of that liberty" of speech, or publication. If a publication is neither blasphemous, obscene, seditious or defamatory, then under the Constitution of this State, no court has the right to restrain it, nor the Legislature power to punish it. The report which the petitioner published has nothing in it either blasphemous, seditious, obscene or defamatory, and clearly falls within the liberty of speech or publication granted by the Constitution, but it is equally certain that this publication was forbidden by the statute of March 12, 1907, because it did not state in full all the facts on which said report or recommendation was based and did not give the name and address in full of all persons who furnished any information concerning the said nominees therein mentioned for the office of sheriff, and did not state in full the information furnished by each of the persons who furnished the same. It seems too clear for argument that this statute is in conflict with section 14 of article 2 of the Constitution. Prior to the enactment of the Act of March 12, 1907, it is not to be doubted that the petitioner would have had the right to have stated all that was said in the said report and recommendation without stating anything more, but under this act that right is now denied unless he prepares and pays for publishing all of the facts upon which he based said recommendation and report and gives the names and addresses of all persons who gave him any information of or concerning either of said candidates and a full statement of all the information that each of them furnished him. Anything which

makes the exercise of a right more expensive or less convenient, more difficult or less effective, impairs that right.

In Gladney v. Sydnor, 172 Mo. l. c. 328, it was said by this court: "Impair means to make worse, to lessen the power, to weaken, to enfeeble, to deteriorate." The right to speak freely is necessarily attended by the correlative right to remain silent. In Wallace v. Railroad, 94 Ga. 732, it appears the Legislature had passed an act entitled: "An Act to require certain corporations to give to their discharged agents or employees the cause of their removal or discharge, when discharged or removed." The Supreme Court of Georgia held said act unconstitutional, and, in doing so, said: "A statute which undertakes to make it the duty of incorporated railroad, express and telegraph companies to engage in correspondence of this sort with their discharged agents and employees, and which subjects them in each case to a heavy forfeiture, under the name of damages, for failing or refusing to do so, is violative of the general private right of silence, enjoyed in this State by all persons, natural or artificial, from time immemorial, and is utterly void and of no effect. Liberty of speech and of writing is secured by the Constitution, and incident thereto is the correlative liberty of silence, not less important nor less sacred. Statements or communications, oral or written, wanted for private information, cannot be coerced by mere legislative mandate at the will of one of the parties and against the will of the other. Compulsory private discovery, even from corporations, enforced, not by suit or action, but by statutory terror, is not allowable where rights are under the guardianship of due process of law." The Act of March 12, 1907, is not confined to forbidding and punishing abuses of the liberty of speech or publications, but undertakes to punish speech or publication without any reference to whether they fall within the legal

exceptions of blasphemy, obscenity, sedition or defamation.

Without further discussion or elaboration we think it is perfectly obvious that the Act of March 12, 1907, transcends the power of the Legislature, and is in conflict with the Constitution and therefore void. As an unconstitutional act is utterly void, the petitioner is entitled to be discharged under the Habeas Corpus Act from further prosecution on the information filed in the criminal court against him. [Ex parte Neet, 157 Mo. 527; Ex parte Lucas, 160 Mo. 218.] The prisoner is discharged.

*Fox, P. J.,* and *Burgess, J.,* concur.