[No. 45649. En Banc. April 19, 1979.]

THE STATE OF WASHINGTON, *Respondent,* v. JACK
M. LOTZE, ET AL, *Appellants.*

THE STATE OF WASHINGTON, *Respondent,* v. ROSA
F. MEYER, ET AL, *Appellants.*

THE STATE OF WASHINGTON, *Respondent,* v. LARRY
A. LOEW, ET AL, *Appellants.*

*Skok & Blake, Stephen Blake,* and *Larry M. Kristianson,* for appellants.

*Slade Gorton, Attorney General,* and *Scott C. Neilson, Assistant,* for respondent.

HICKS, J.—This consolidated appeal involves three cases certified to this court by the Court of Appeals, Division Three. The sole issue presented is whether RCW 47.42.030[1] and .040[2] unconstitutionally infringe upon appellants' First Amendment rights of free speech. The trial court upheld the constitutionality of the statutes. We affirm.

According to the facts stipulated to the trial court, the defendants/appellants own real property in Stevens County bordering on U.S. Highway 395, which is a federal–aid primary highway and part of the scenic highway system. The

---

[1]"Except as permitted under this chapter, no person shall erect or maintain a sign which is visible from the main traveled way of the interstate system, the primary system, or the scenic system. In case a highway or a section of highway is both a part of the primary system and the scenic system, only those signs permitted along the scenic system shall be erected or maintained." RCW 47.42.030.

[2]RCW 47.42.040 reads in part as follows:
"It is declared to be the policy of the state that no signs which are visible from the main traveled way of the interstate system, primary system, or scenic system shall be erected or maintained except the following types:
"(1) Directional or other official signs or notices that are required or authorized by law;
"(2) Signs advertising the sale or lease of the property upon which they are located;
"(3) Signs advertising activities conducted on the property on which they are located;
". . .
"Only signs of type 1, 2 and 3 shall be erected or maintained within view of the scenic system."

property is located in a noncommercial, nonindustrial area. Appellants maintain signs on their property which are visible from the highway and within 660 feet of the right–of–way. These signs convey the owners' personal beliefs of a political or social nature. The parties agree that appellants' signs are prohibited under RCW 47.42, a composite of the Highway Advertising Control Act of 1961 (Laws of 1961, ch. 96, § 17, p. 1575) and the Scenic Vistas Act of 1971 (Laws of 1971, 1st Ex. Sess., ch. 62, § 19, p. 485). The State filed complaints seeking to obtain orders of removal. In two cases the State sought to establish reasonable compensation pursuant to RCW 47.42.103. In the third case the State petitioned for abatement of an alleged nuisance.[3] RCW 47.42.080.

The leading decision interpreting Washington's highway sign law (RCW 47.42), is *Markham Advertising Co. v. State,* 73 Wn.2d 405, 439 P.2d 248 (1968), *appeal dismissed,* 393 U.S. 316, 21 L. Ed. 2d 512, 89 S. Ct. 553, *rehearing denied,* 393 U.S. 1112, 21 L. Ed. 2d 813, 89 S. Ct. 854 (1969). In that case, several outdoor advertising companies challenged the Highway Advertising Control Act of 1961 on constitutional grounds. The trial consisted of a lengthy examination of the relationship of highway signs and highway safety. This court upheld the act as a proper exercise of the state's police power. The court found a substantial relation between the regulation of billboard advertising along highways and the legitimate public purpose of promoting traffic safety. In addition, the court recognized preservation of aesthetic values as a legitimate concern within the scope of the police power.

In addressing appellants' First Amendment challenge to the Highway Advertising Control Act of 1961, the *Markham* court relied upon the distinction between "purely commercial advertising" and other forms of speech, as

---

[3]In oral argument before this court, the State indicated that it proceeded against the sign involved in State v. Loew, cause No. 20007, under RCW 47.42.080 because the owners had failed to obtain a permit under the act.

delineated by the United States Supreme Court in *Valentine v. Chrestensen,* 316 U.S. 52, 86 L. Ed. 1262, 62 S. Ct. 920 (1942). *Markham Advertising Co. v. State, supra.* The *Markham* court rejected the free speech claims of the commercial advertisers as "minimal", concluding at page 429:

> This intrusive quality of highway outdoor advertising, coupled with the hazard it poses to traffic safety and its purely commercial nature, all persuade us that RCW 47.42 is a reasonable regulation which does not violate the First Amendment.

The Scenic Vistas Act of 1971 substantially amended the 1961 act upheld in *Markham.* Visibility became the regulatory criterion, and compensation provisions were added. The declaration of purposes section of the current act includes: promotion of health, safety, welfare, convenience and enjoyment of the traveling public, protecting the public investment in highways, attracting visitors by conserving natural beauty, and ensuring the safe and effective presentation of information of specific interest to travelers. RCW 47.42.010.

RCW 47.42.030 contains a sweeping prohibition against signs visible from interstate, primary or scenic systems except as permitted under the act. "Sign" is broadly defined under the act to include any outdoor sign, display, billboard "or other thing which is designed, intended or used to advertise or inform . . ." RCW 47.42.020(8). The act does not prohibit all visible signs within 660 feet of a primary system. RCW 47.42.040 delineates several exceptions to the broad prohibition of RCW 47.42.030, including: directional signs, official signs, signs advertising the sale or lease of property upon which they are located, signs advertising activities conducted on the property on which they are located. Such signs are permissible within view of a scenic system subject to size, location, and number regulations. RCW 47.42.045, .046. None of the excepted sign types, however, apply to appellants' signs. The act also allows signs adjacent to highways within commercial or

industrial areas, as defined by section .020, subject to certain size and spacing restrictions under sections .062 and .063.

Washington's current sign law meets the compliance requirements of Title 1 of the federal Highway Beautification Act of 1965, Pub. L. No. 89–285, Oct. 22, 1965, 79 Stat. 1028, 23 U.S.C. § 131 (1976). The federal act provides that a state must establish "effective control" of highway advertising along federal–aid highways to avoid a 10 percent reduction in its portion of federal highway funds. 23 U.S.C. § 131(b) (1976).

We examine appellants' challenge to RCW 47.42 in light of *Markham* and First Amendment doctrine. In *Markham,* the court dismissed as "minimal" the First Amendment interests asserted by commercial advertisers. We relied upon the commercial speech "exception" to First Amendment protection, a distinction that has never been clear cut or all inclusive. *See, e.g., Murdock v. Pennsylvania,* 319 U.S. 105, 110–11, 87 L. Ed. 1292, 63 S. Ct. 870, 146 A.L.R. 81 (1943); *New York Times Co. v. Sullivan,* 376 U.S. 254, 256, 11 L. Ed. 2d 686, 84 S. Ct. 710, 95 A.L.R.2d 1412 (1964). The purported dichotomy between commercial speech and other forms of speech has eroded since the *Markham* decision. Two recent cases have attenuated the commercial speech exception to First Amendment protection. *See Virginia Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 48 L. Ed. 2d 346, 96 S. Ct. 1817 (1976); *Bigelow v. Virginia,* 421 U.S. 809, 44 L. Ed. 2d 600, 95 S. Ct. 2222 (1975).

Whatever the residual distinctions between the *degree* of First Amendment protection accorded commercial and other forms of protected speech, appellants assert that their First Amendment interests in purely political expression are entitled to a higher degree of protection than that accorded commercial billboards in *Markham.* We agree. Thus, we must ascertain the appropriate standard by which to review appellants' free speech challenge.

■ The State acknowledges that when a statute based on its police power is challenged on First Amendment grounds, it must (1) establish a compelling state interest, and (2) demonstrate a nexus of "necessity" between the statute and the State's asserted interest. *See, e.g., State v. Conifer Enterprises, Inc.*, 82 Wn.2d 94, 508 P.2d 149 (1973). Further, a statutory restraint imposed upon a First Amendment freedom bears a heavy presumption against its constitutionality. *Freedman v. Maryland*, 380 U.S. 51, 13 L. Ed. 2d 649, 85 S. Ct. 734 (1965).

The State argues that the challenged statutes satisfy the two–pronged *Conifer* test. It asserts that the state's compelling interest in traffic safety as established in *Markham*, and unrefuted in the instant cases, justifies the limitation on First Amendment freedoms. The State concedes that no compelling state interest exists if the statutory purposes could be achieved by less drastic means. *See Shelton v. Tucker*, 364 U.S. 479, 5 L. Ed. 2d 231, 81 S. Ct. 247 (1960). It argues that the statutes are sufficiently "refined" to restrain speech only to the extent necessary to promote the state's interest in traffic safety and aesthetic values.

While they do not refute the traffic safety rationale established in *Markham*, appellants argue that *Markham* is distinguishable as it dealt only with commercial signs. It is the State's position that *Markham*'s demonstrated and judicially approved rationale of highway safety will not support content–based distinctions between signs bearing commercial and noncommercial messages. The State claims that there is no difference in the effect on the motorist between commercial and noncommercial signs. With this contention, we agree, and therein lies the problem. The statutory scheme allows certain signs along scenic highways, such as on–premise advertising and realty "for sale" signs. RCW 47.42.040. These delineated exceptions pertain only to commercial signs, however, and do not encompass appellants' political signs.

As we have discussed above, RCW 47.42 is not a blanket exclusion of signs along protected highways. The exceptions

applicable to the area where appellants' signs are located, however, basically are for commercial speech. Although, for First Amendment protection, the distinction between commercial speech and other speech has been considerably blurred by *Bigelow v. Virginia, supra,* and *Virginia Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc., supra,* political speech should continue to be accorded whatever residual preference remains. What then is the justification for the scheme contained in RCW 47.42 where the authorized exceptions permitted come down on the side of commercial speech?

██ The State, of course, may regulate the time, place and manner of speech. Such statutes stand on different footing than laws prohibiting speech altogether. *Linmark Assocs., Inc. v. Willingboro,* 431 U.S. 85, 94–95, 52 L. Ed. 2d 155, 97 S. Ct. 1614 (1977). In *Linmark,* the court held that an ordinance which selectively prohibited realty "for sale" or "sold" signs, regardless of size or shape, was not "genuinely concerned" with place or manner of speech in order to promote a value unrelated to its suppression. The court specifically noted that accordingly, it did not "decide whether a ban on signs or a limitation on the number of signs could survive constitutional scrutiny if it were unrelated to the suppression of free expression", citing *Markham Advertising Co. v. State,* 73 Wn.2d 405, 439 P.2d 248 (1968). *Linmark,* at 94 n.7. Reasonable restrictions furthering a legitimate state interest may be imposed. *Kovacs v. Cooper,* 336 U.S. 77, 85–86, 93 L. Ed. 513, 69 S. Ct. 448 (1949). The reasonableness of a time, place and manner restriction, we believe, is to be determined by balancing the public interest advanced by the regulation against the extent of the restriction on First Amendment rights.

Incidental restrictions on the exercise of First Amendment rights have been permitted to the extent they further a compelling state interest which is unrelated to the suppression of expression and is substantial in relation to the restriction imposed. The restriction must be no greater than necessary to protect the governmental interest and

must leave open "'ample alternative channels for communication'". *Linmark,* at 93.

Here, the compelling state interests are traffic safety and aesthetic values, together with a number of other interests which, in the context of these cases, may be of somewhat lesser import. To achieve these interests, the legislature in RCW 47.42 has first decreed that there be no signs and then has granted certain exceptions. The exceptions appear to be tied to necessity. As in *Linmark,* the permitted signs are linked to specific property and its use. Certain limitations are imposed on size, number and distances. RCW 47.42.045. Short of permitting the signs, it is difficult to visualize how the particular message could be conveyed to those deemed most important to be reached, *i.e.,* those in the immediate vicinity of the property.

Appellants, however, assert that the statute as applied to them is, in effect, a total denial of speech as they have no effective alternative channels of communication. We disagree. Political and cultural messages are not normally confined to a particular situs for their efficacy and may be communicated by less visually damaging channels than billboards adjacent to scenic highways. While a political message may be relevant to a particular locale, it need not be linked with a specific property site in order to derive meaning. Unlike on–premise business signs and realty "for sale" signs, political messages such as those of appellants are addressed to the general universality of political ideas.

A total prohibition of on–premise business signs or realty "for sale" signs, on the other hand, may violate the First Amendment under *Virginia Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc., supra,* and its progeny. Such a prohibition may deny the only available channel of communication to one trying to *identify,* rather than merely advertise his business or property. *See Linmark Assocs., Inc. v. Willingboro, supra; see also* J. Lucking, *The Regulation of Outdoor Advertising: Past, Present and Future,* 6 Environmental Affairs 179 (1977).

We conclude that RCW 47.42 as applied to appellants' billboards does not violate their First Amendment rights of free speech. The traffic safety rationale upheld in *Markham Advertising Co. v. State, supra,* and not refuted at trial in these cases is sufficiently compelling to outweigh the minimal restraint on appellants. The statutory scheme represents a reasonable place and manner limitation on speech leaving ample alternative channels of communication for appellants. Appellants' speech is not in any way being controlled as to content; its stricture is narrowly confined to place and manner. The entire panoply of means to communicate their views is open to appellants except for the limited restrictions of RCW 47.42.

Appellants invite us to preclude all signs on scenic highways if their political signs are to be totally constrained. Such a proposal is more fittingly directed to the legislature than to this court.

The trial court is affirmed.

UTTER, C.J., and ROSELLINI, STAFFORD, WRIGHT, BRACHTENBACH, HOROWITZ, and DOLLIVER, JJ., concur.

Reconsideration denied June 7, 1979.