STATE of Missouri, Respondent,

v.

Jacob R. PRIBBLE, Appellant.

No. SC 89473.

Supreme Court of Missouri,
En Banc.

May 26, 2009.

Matthew A. Radefeld, Daniel A. Juengel, Anthony Muhlenkamp, Julie Brothers, Frank, Juengel & Radefeld, Clayton, for Appellant.

Jacob Pribble, pro se.

Chris Koster, Atty. Gen., James B. Farnsworth, Asst. Atty. Gen., for Respondent.

MARY R. RUSSELL, Judge.

Jacob Pribble ("Defendant") challenges the constitutional validity of section 566.151, RSMo Supp.2008,[1] pursuant to which he was convicted of attempted enticement of a child. He was sentenced to six years imprisonment. He argues that the statute is unconstitutional because it constitutes cruel and unusual punishment, is vague, encroaches on protected speech, and went into effect pursuant to an invalid emergency clause.

This Court has exclusive jurisdiction pursuant to article V, section 3, of the Missouri Constitution in that Defendant challenges the constitutional validity of a Missouri statute. Because Defendant's constitutional challenges to the statute are without merit, this Court affirms the judgment.

### I. Background

The Maryland Heights Police Department conducted an undercover investigation online by having an officer enter chat rooms and pose as a 14–year–old female. Defendant initiated contact with the undercover officer's persona and began an online exchange lasting more than an hour. The exchange included Defendant's sending the officer explicit pictures of himself and suggesting that they could perform particular sexual acts together. A week

---

1. All statutory references are to RSMo Supp. 2008.

later, Defendant again contacted the officer and told her he would like to see her nude and have her touch his penis. He made specific arrangements regarding where to rendezvous and where to perform the acts. At the designated time and place in a park, Defendant arrived, got out of his car, and was taken into custody by the awaiting officers. He then waived his *Miranda* rights and made a written statement. Among other admissions, he stated that he believed he was meeting a 14–year–old female and was hoping "to teach someone something new." He does not challenge the sufficiency of the evidence.

Defendant was charged with violating section 566.151, as amended in 2006, for attempted enticement of a child. Under this statute, it is a crime for a person over the age of 21 years to lure, solicit, or entice, through words or actions, any person under the age of 15 years for the purpose of engaging in sexual conduct. Section 566.151's 2006 amendments changed the penalty provisions of the statute, making both enticement and attempted enticement of a child an unclassified felony with a minimum prison term of five years with no eligibility for parole, probation, or conditional release.[2] As amended, the statute states,

> 1. A person at least twenty-one years of age or older commits the crime of enticement of a child if that person persuades, solicits, coaxes, entices, or lures whether by words, actions or through communication via the Internet or any electronic communication, any person who is less than fifteen years of age for the purpose of engaging in sexual conduct.

> 2. It is not an affirmative defense to a prosecution for a violation of this section that the other person was a peace officer masquerading as a minor.

> 3. Enticement of a child or an attempt to commit enticement of a child is a felony for which the authorized term of imprisonment shall be not less than five years and not more than thirty years. No person convicted under this section shall be eligible for parole, probation, conditional release, or suspended imposition or execution of sentence for a period of five calendar years.

The General Assembly invoked an emergency provision of the Missouri Constitution, article III, section 29, which allowed the new, increased penalties to go into effect immediately when signed by the governor on June 5, 2006.

## II. Analysis

This Court reviews *de novo* whether a statute is constitutional. *City of Arnold v. Tourkakis,* 249 S.W.3d 202, 204 (Mo. banc 2008). A statute is presumed constitutional and will be found unconstitutional only if it clearly contravenes a specific constitutional provision. *Id.*

### A. The penalty is not grossly disproportionate to the offense

Defendant argues that section 566.151's mandatory five-year prison sentence without the possibility of probation or parole violates the prohibition against cruel and unusual punishment. U.S. Const. amend. VIII; Mo. Const. art. I, sec. 21.[3] He asserts that the statute's punish-

---

**2.** Previously, attempted enticement was a class D felony, and enticement was a class C felony. Also, prior to the amendments, both crimes were permitted probation and had no special restrictions on parole or conditional release.

**3.** Defendant does not argue that the Missouri Constitution offers protections in addition to

ment is "grossly disproportionate" on its face when considered in light of the crime.

Substantial deference is due to the legislature's determination of proper punishment. *See Solem v. Helm,* 463 U.S. 277, 290, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). This Court follows the approach announced in *Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), which clarified that reviewing courts are to determine, as a threshold matter, whether a sentence is "grossly disproportionate." *See State v. Lee,* 841 S.W.2d 648, 654 (Mo. banc 1992) (finding that a life sentence for robbery in the first degree was not disproportionate). In making this determination, this Court considers the gravity of the offense and the harshness of the penalty. *Id.* If a sentence is not grossly disproportionate, then additional comparisons to sentences given to other defendants for the same or similar crimes are irrelevant.[4] *Id.*

Section 566.151.3's penalty requires a sentence from five to 30 years without eligibility for parole, probation, conditional release, or suspended imposition or execution of sentence for five years. The nature and the potential social harm of this crime—an adult of at least 21 years attempting to lure a child under 15 years for the purpose of engaging in sexual acts—is indeed serious and alarming. Comparing this to the punishment, it is apparent that such a serious crime may carry with it a serious penalty without running afoul of cruel and unusual punishment. *See, e.g., Harmelin,* 501 U.S. at 1002–05, 111 S.Ct. 2680 (Kennedy, J.,

concurring) (finding a mandatory life sentence for cocaine possession was constitutional and noting that a 40–year sentence for marijuana possession with the intent to distribute previously was found constitutional); *State v. Bell,* 719 S.W.2d 763, 766 (Mo. banc 1986) (stating that a sentence's duration is not cruel and unusual unless it is so disproportionate that it shocks the moral sense of reasonable people).

In light of this crime's seriousness, the minimum sentence of five years with no possibility of parole cannot be said to be disproportionate, much less grossly disproportionate. The same also must be said for Defendant's actual sentence of six years for acts that included soliciting, planning, and then attempting to carry out the plan to engage in sexual activities with a minor. This Court will not question the General Assembly's determination beyond this narrow inquiry, as matching prison terms with particular crimes is, as a general matter, the legislature's province. *See Harmelin,* 501 U.S. at 998, 111 S.Ct. 2680 (Kennedy, J., concurring).

## B. Section 566.151 is not void for vagueness

Defendant next claims that section 566.151's penalty provision is unconstitutionally vague in that its use of the word "convicted" would be confusing to a person of ordinary intelligence. Defendant suggests that this vagueness stems from the fact that a person who receives a suspended imposition of sentence has not been convicted in the technical legal sense. *See*

---

the United States Constitution in any of his points.

4. Only in the rare case that an inference of a grossly disproportionate sentence is present does a reviewing court then compare the sentences imposed on other criminals in the same jurisdiction and the sentences imposed for commission of the same crime in other

jurisdictions. *See Lee,* 841 S.W.2d at 654 (noting the three-prong test from *Solem,* 463 U.S. at 290–92, 103 S.Ct. 3001, that *Harmelin* later narrowed). Even if these additional comparisons were considered here, though, it would appear that they provide little support for Defendant's position.

*Yale v. City of Independence,* 846 S.W.2d 193, 194 (Mo. banc 1993) (stating that the term "conviction" requires a final judgment and a suspended imposition of sentence is not a final judgment). Given this, he asserts that a person cannot determine whether a suspended imposition of sentence would trigger the language forbidding parole and other forms of release for five years. He further points out that, "[w]here there is ambiguity, the rule of lenity requires that the court strictly construe a criminal statute against the state." *State v. Johnson,* 244 S.W.3d 144, 168 (Mo. banc 2008).

The challenged language appears in section 566.151.3, which states,

> Enticement of a child or an attempt to commit enticement of a child is a felony for which the authorized term of imprisonment shall be not less than five years and not more than thirty years. No person *convicted* under this section shall be eligible for parole, probation, conditional release, or suspended imposition or execution of sentence for a period of five calendar years.

(emphasis added).

The void for vagueness doctrine ensures that laws give fair and adequate notice of proscribed conduct and protects against arbitrary enforcement. *State ex rel. Nixon v. Peterson,* 253 S.W.3d 77, 81 (Mo. banc 2008). The doctrine applies not only to laws that proscribe conduct, but it also may apply to standardless penalties. *See Pac. Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 44, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991). "The test in enforcing the doctrine is whether the language conveys to a person of ordinary intelligence a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Id.* This Court will give the law effect if it is amenable to a reasonable and practical construction.

*Harjoe v. Herz Fin.,* 108 S.W.3d 653, 655 (Mo. banc 2003).

Defendant does not allege that the statute is vague in its prohibited conduct, but rather he asserts that the penalty is vague because a person given a suspended imposition of sentence does not receive a conviction. However, reading the statutory sentence in its entirety removes any confusion. It clearly states that a suspended imposition of sentence is not available for this crime. Section 566.151.3 ("No person ... shall be eligible for ... suspended imposition or execution of sentence for a period of five calendar years."). As such, the only meaning that section 566.151.3 could possibly have is that a person found guilty of this offense is to receive a minimum sentence of five years with no possibility of parole, probation, conditional release, or a suspended imposition or execution of his sentence. Defendant's vagueness argument has no merit.

## C. Section 566.151 does not infringe on protected speech

Defendant argues that section 566.151 violates the First Amendment to the United States Constitution and article I, section 8, of the Missouri Constitution because it impermissibly regulates speech related to sexual fantasies.

Section 566.151.1 states,

> A person at least twenty-one years of age or older commits the crime of enticement of a child if that person persuades, solicits, coaxes, entices, or lures whether by words, actions or through communication via the Internet or any electronic communication, any person who is less than fifteen years of age for the purpose of engaging in sexual conduct.

The First Amendment and the Missouri Constitution both protect the freedom of speech, but it has long been recognized that these protections are not absolute. *See State v. Smith*, 422 S.W.2d 50, 55 (Mo. banc 1967) (stating that free speech is not an absolute right under all circumstances and is subject to the state's inherent police power). The United States Supreme Court has stated that "[o]ffers to engage in illegal transactions are categorically excluded from First Amendment protection." *See United States v. Williams*, —— U.S. ——, ——, 128 S.Ct. 1830, 1841, 170 L.Ed.2d 650 (2008) (finding a prohibition on offers to provide or requests to obtain child pornography well within constitutional bounds even if no one involved actually had any child pornography). This Court has made similar assertions, previously upholding the validity of a prostitution-related statute that made it illegal to engage not only in the physical sexual acts but also in the negotiations. *See State v. Roberts*, 779 S.W.2d 576, 579 (Mo. banc 1989). This Court reasoned that, "[b]ecause the words uttered as an integral part of the prostitution transaction do not have a lawful objective, they are not entitled to constitutional protection." *Id.*

Reading the elements of the crime in section 566.151 in total, it is apparent that this statute does not criminalize mere fantasy or other speech entitled to constitutional protection. Rather, the statute requires an act of persuasion, solicitation, or enticement "for the purpose of engaging in sexual conduct." Section 566.151.1. In other words, a defendant cannot be convicted under this statute for mere fantasy, which, by definition, is not for the purpose of actually engaging in the imagined conduct. Neither does the statute's language cover scenarios where a speaker is advocating the merits of sexual relations with children. *See Williams*, 128 S.Ct. at 1842 (distinguishing advocacy in support of child pornography from constitutionally unprotected offers to provide it or requests to obtain it). Rather, the words uttered here are "an integral part" of the attempt to lure a child for the purpose of engaging in sexual activity; unquestionably, this is not a lawful objective. *See Roberts*, 779 S.W.2d at 579; *see also United States v. Bailey*, 228 F.3d 637, 639 (6th Cir.2000) (applying a similar federal law and stating that a defendant "simply does not have a First Amendment right to attempt to persuade minors to engage in illegal sex acts").

Defendant's overbreadth argument fails for similar reasons. The overbreadth doctrine may apply when criminal statutes "make unlawful a substantial amount of constitutionally protected conduct . . . even if they also have legitimate application." *State v. Moore*, 90 S.W.3d 64, 66 (Mo. banc 2002) (citation omitted). As discussed above, Defendant does not show that this statute makes any protected conduct unlawful.

### D. The amendment to section 566.151 was validly enacted as an emergency measure

Defendant argues that the General Assembly did not enact the amendment to section 566.151 properly as an emergency measure. He points out that the default effective date was August 28, 2006, 90 days after the adjournment of the session. This date would have been after the date of his offense on August 17, 2006. In turn, he asserts that the new law violates the prohibition against ex post facto or retrospective laws regarding his actions.[5]

---

5. *See* U.S. Const. art. I, sec. 10; Mo. Const. art. I, sec. 13.

The Missouri Constitution sets out the default effective date for enacted laws and also provides that the date may differ for emergencies:

> No law passed by the general assembly, except an appropriation act, shall take effect until ninety days after the adjournment of the session in either odd-numbered or even-numbered years at which it was enacted. However, *in case of an emergency which must be expressed in the preamble or in the body of the act*, the general assembly by a two-thirds vote of the members elected to each house, taken by yeas and nays may otherwise direct.

Mo. Const. art. III, sec. 29 (emphasis added).

Intending to invoke this emergency clause here, the legislature stated:

> Because of the need to protect Missouri citizens from sexual offenders, section A of this act is deemed necessary for the immediate preservation of the public health, welfare, peace and safety, and is hereby declared to be an emergency act within the meaning of the constitution, and section A of this act shall be in full force and effect upon its passage and approval.

■ This Court has stated that "a legislative declaration stating an act to be an emergency measure is entitled to great weight," but it is not conclusive, as the courts make the final determination of whether an emergency in fact exists. *Padberg v. Roos*, 404 S.W.2d 161, 170 (Mo. banc 1966). In making this determination, "the test is whether the factual situation is such that there is actually a crisis or emergency which requires immediate or quick legislative action for the preservation of the public peace, property, health, safety or morals." *State ex rel. Tyler v. Davis*, 443 S.W.2d 625, 631 (Mo. banc 1969).

■ In its emergency clause, the legislature did not give a detailed explanation of the emergency, but it is not required to do so under the Missouri Constitution, which merely requires "an emergency which must be expressed." *See* Mo. Const. art. III, sec. 29; *Bd. of Regents for Ne. Mo. State Teachers Coll. v. Palmer*, 356 Mo. 946, 204 S.W.2d 291, 294–95 (1947) (addressing an argument that a bill's emergency clause was "merely a conclusion" and holding that the brief emergency statement was valid where it recited an immediate need for increased funding to schools after World War II in the interests of public peace, health, and safety). This may be contrasted with an emergency clause that both fails to state an emergency and contains nothing in its subject matter that suggests an emergency. *See, e.g., Padberg*, 404 S.W.2d at 168–69 (finding an ordinance's provision changing employees' status invalid in these circumstances). Here, consistent with *Palmer*, the emergency clause expresses an immediate need for protection from sexual offenders for the public health, welfare, peace, and safety.

■ As such, this Court need determine only if an actual emergency existed, giving great weight to the legislature's initial determination. There are many reasons that would support an emergency here. The legislature may have believed that, prior to this amendment, many of those found guilty of enticement were receiving relatively light penalties, such as suspended execution of sentences or probation. Or, the legislature may have wanted to put this increased penalty in place immediately with the hope of deterring even one more instance of this dangerous crime that is becoming more prevalent with children's increased use of the Internet. In light of these justifications, this Court gives the determination of the legis-

lature great weight and finds no reason to question it here.

### III. Conclusion

The circuit court's judgment is affirmed.

All concur.